UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION at LONDON

CIVIL ACTION NO. 09-90-KSF

TIMOTHY W. ELDRIDGE                                                                            PLAINTIFF

v.                                      **OPINION & ORDER**

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY                              DEFENDANT

\* \* \* \* \* \* \* \* \*

The plaintiff, Timothy W. Eldridge, brought this action pursuant to 42 U.S.C. § 405(g) to obtain judicial review of an administrative decision of the Commissioner of Social Security denying his claim for Supplemental Security Income based on disability ("SSI"). The Court, having reviewed the record, will affirm the Commissioner's decision, as it is supported by substantial evidence and decided by the proper legal standards.

**I.    OVERVIEW OF THE PROCESS**

In determining whether a claimant has a compensable disability under the Social Security Act, the regulations provide a five-step sequential evaluation process which the administrative law judge must follow. 20 C.F.R. § 404.1520(a)-(e); *see Walters v. Commissioner of Social Security*, 127 F.3d 525, 529 (6th Cir. 1997). The five steps, in summary, are as follows:

    (1)    If the claimant is currently engaged in substantial gainful activity, he is not disabled.

    (2)    If the claimant is not doing substantial gainful activity, his impairment must be severe before he can be found disabled.

    (3)    If the claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous

1

>   period of at least twelve months, and his impairment meets or equals a listed impairment, the claimant is presumed disabled without further inquiry.
>
> (4) If the claimant's impairment does not prevent him from doing past relevant work, he is not disabled.
>
> (5) Even if the claimant's impairment does prevent him from doing his past relevant work, if other work exists in the national economy that accommodates his residual functional capacity and vocational factors (age, education, skills, etc), he is not disabled.

*Id.* The burden of proof is on the claimant throughout the first four steps of this process to prove that he is disabled. *Bowen v. Yuckert*, 482 U.S. 137, 146, n. 5 (1987). If the administrative law judge reaches the fifth step without a finding that the claimant is not disabled, then the burden shifts to the Commissioner to consider his residual functional capacity, age, education, and past work experience to determine if he could perform other work. If not, he would be deemed disabled. 20 C.F.R. § 404.1520(f).

The decision of the Commissioner must be supported by substantial evidence. *Varley v. Secretary of Health and Human Services*, 820 F.2d 777, 779 (6th Cir. 1987). Once the decision of the Commissioner is final, an appeal may be taken to the United States District Court pursuant to 42 U.S.C. § 405(g). Judicial review of the Commissioner's decision is restricted to determining whether it is supported by substantial evidence and was made pursuant to the proper legal standards. *See Cutlip v. Secretary of Health and Human Services*, 25 F.3d 284, 286 (6th Cir. 1994). "Substantial evidence" is defined as "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* In reviewing the decision of the Commissioner, courts are not to conduct a *de novo* review, resolve conflicts in the evidence or make credibility determinations. *See id.* Rather, the court must affirm the Commissioner's decision so long as it is supported by substantial evidence, even if the court might have decided the case differently. *See Her*, 203 F.3d at 389-90. However, the court

must review the record as a whole, and must take into account whatever in the record fairly detracts from its weight. *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

## II.   THE ADMINISTRATIVE DECISION

Eldridge filed an application on August 13, 2005, alleging an onset date of November 13, 2002, which was denied initially and on reconsideration. A hearing was held and, in a written opinion issued May 25, 2007, the ALJ denied Eldridge's claim for disability benefits. The ALJ's decision became final when the Appeals Council denied Eldridge's request for review on January 22, 2008. Eldridge has exhausted his administrative remedies and filed a timely action with this Court. The case is now ripe for review under 42 U.S.C. § 405(g).

At the time of the ALJ's decision, Eldridge was 37-years-old with a limited education. (TR 23). He has past relevant work experience as a roof bolter. (TR 108). Eldridge alleges disability due to problems with his hands, back pain, nerves, stress and depression. (TR 92, 102, 234).

The ALJ began his analysis at Step One by determining that Eldridge has not engaged in substantial gainful activity since his alleged onset date. (TR 17). At Step Two, the ALJ found that Eldridge suffered from back pain, pain of the hands, hypertension, shortness of breath and depression. (TR 17). The ALJ cited an MRI performed in May 2003 which revealed a small central disc bulge at L5-S1 associated with a small annular tear. No disc herniation or spinal stenosis was found. On June 15, 2005, Eldridge saw Dr. Jose Echeverria at ARH and complained of persistent and severe back pain. During physical examination he complained of tenderness when the paraspinal muscles in the lumbrosacral area were palpitated. Dr. Echeverria diagnosed lower back pain, left hip pain, hypertension and obesity. (TR 17, 201-03). The ALJ also cited records from Dr. Richard A. Lingreen who examined Eldridge on September 13, 2005. Dr. Lingreen diagnosed Eldridge with lumbago, lumbar sprain/strain syndrome, sciatica and thoracic pain. (TR 18, 204-06). Additionally,

3

the ALJ cited a consultative examination by Dr. Mark V. Burns who opined that Eldridge retained the ability to perform activities involving sitting, standing, hearing, seeing and speaking. (TR 18, 207-12). The ALJ also discussed treatment by Dr. Syed Raza, a psychiatrist, who placed Eldridge on Prozac, Trazodone and Atarax. Dr. Raza's records indicated that he tolerated the medication well and that mental status examinations revealed no acute abnormalities. (TR 18, 222-36). Further, the ALJ discussed a consultative examination by Phil Pack, M.S. who examined Eldridge's psychological functioning on November 22, 2005. (TR 18).

Continuing to Step Three, the ALJ determined that these impairments or combination of these impairments are not associated with clinical signs and findings that meet or equal in severity any of the listed impairments. (TR 19). With regard to Eldridge's mental impairments, the ALJ determined that his mental impairments are not severe enough to meet or equal listings 12.02 (organic mental disorders) or 12.04 (affective disorders) because they result in no more than mild restrictions of activities of daily living; moderate difficulties in maintaining social functioning; mild difficulties in maintaining concentration, persistence or pace; and no episodes of decompensation (each of extended duration). (TR 19). The ALJ adopted the DDS findings contained in the record and noted the fact that Eldridge had not required psychiatric hospitalization since the alleged disability onset date. Further, the ALJ noted that Eldridge had not required ongoing mental health counseling since the alleged onset date. (TR 19-20).

At Step Four, the ALJ found that Eldridge was unable to perform his past relevant work. At Step Five, the final step, relying on testimony of the Vocational Expert ("VE"), and taking into consideration Eldridge's age, educational background, prior work experience and residual functional capacity ("RFC"), the ALJ found that Eldridge was capable of making a successful adjustment to work existing in significant numbers in the national economy and on this basis denied his claim for

4

SSI.

In making his determination that Eldridge was not disabled, the ALJ found that Eldridge has the RFC to engage in sedentary work requiring the occasional lifting of up to ten pounds. He is able to sit for at least a total of six hours per workday. He is able to stand/walk for up to a total of two hours per workday. He is unable to climb ladders, ropes, scaffolds, ramps or stairs. He is unable to climb, stoop, bend, crouch or crawl and cannot engage in fine manipulation with his left hand. He should not be exposed to vibration or moving machinery. He has limited but satisfactory abilities to relate to coworkers, deal with the public and interact with supervisors. (TR 20).

In making the RFC determination, the ALJ noted that because a claimant's symptoms can sometimes suggest a greater level of severity of impairment than can be shown by the objective medical evidence alone, he must consider the factors set out in 20 CFR 404.152(c) and 416.92(c). After discussing these factors, the ALJ found that Eldridge's medically determinable impairments could reasonably be expected to produce the alleged symptoms, but that his statements concerning the intensity, persistence and limiting effects of these symptoms were not entirely credible. (TR 21-22). The ALJ found that the medical record does not indicate that Eldridge has been found to have a spinal abnormality severe enough to cause the limitations he alleges. The ALJ also found that the record indicated that his hypertension can be kept under control with medication as can his mental impairments. Further, there was evidence that Eldridge attempted to exaggerate his limitations. An evaluator noted that he "seemed to be putting his worst foot forward" during a November 22, 2005, examination, and during formal testing he gave up quickly. Further, intelligence test scores (verbal IQ of 58) suggested significant levels of mental retardation; however, mental retardation was not reflected in treatment records and seemed inconsistent with Eldridge's general work history. The examiner noted that Eldridge was unable to name the colors in the United States flag or state the

purpose of a thermometer. The ALJ noted that these things suggested that Eldridge was not a fully credible witness and found that all self-reported symptoms inconsistent with an RFC for sedentary work were not credible. (TR 22).

At the hearing, in response to the hypothetical posed by the ALJ, the VE testified that Eldridge could perform work as a surveillance system monitor, packer, production worker or assembler. (TR 23). Consequently, the ALJ determined that Eldridge was not disabled within the meaning of the Social Security Act

### III. ANALYSIS

On appeal, Eldridge argues that the ALJ's decision was not based on substantial evidence. Eldridge argues that the ALJ failed to prove that he retains the RFC to engage in sedentary work but does not offer any specific support for this argument. Since there is substantial evidence to support the ALJ's finding that Eldridge retains the RFC to engage in sedentary work, the Court will grant summary judgment in favor of the Commissioner.

The ALJ determined that Eldridge retained the RFC to engage in sedentary work with certain restrictions. In support of his RFC determination, the ALJ cited Eldridge's general medical treatment history and consultative examination reports. He gave some, but not great weight to the assessment findings contained in a report that Eldridge identifies as being from Dr. Robert Hoskins. Dr. Hoskins reported that Eldridge was tender over the lumbar spine and right hip but otherwise noted no significant abnormalities such as instability, defects, tenderness or abnormal strength/tone. Dr. Hoskins completed a medical assessment of his ability to do work-related activities and found that Eldridge had the ability to lift/carry 10 pounds occasionally, stand/walk for 80 minutes and sit for 90 minutes. Dr. Hoskins opined that Eldridge could never perform postural activities, had limited ability to reach, handle, feel and push/pull and needed to avoid heights, moving machinery

6

and temperature extremes.  (TR 322-23).

As the ALJ noted, Eldridge's histories of low back pain, arthritis and left hand dysfunction make it reasonable that he should not be required to lift more than ten pounds, not climb ramps or stairs, not be exposed to vibration or moving machinery, not be required to engage in fine manipulation with his left hand and be unable to climb, stoop, bend, crouch or crawl.  The rest of Dr. Hoskins' opinions, however, were not supported by objective medical evidence.  The weight of any physician's opinion depends on the extent to which it is supported by medical data and other evidence of record.  20 C.F.R. § 404.1527(d)(3), 416.927(d)(3).  While medical source statements about what a claimant can do are relevant, they are not determinative because the ALJ has the responsibility of determining the claimant's RFC.  Since the Court agrees with the ALJ's determination that Dr. Hoskins' opinions are not supported by objective medical evidence, the weight that the ALJ gave to the opinions was appropriate.

The ALJ's determination that Eldridge is not entirely credible is also supported by substantial evidence.  Eldridge testified that he is unable to grip with his left hand, he gets dizzy everyday, sometimes twice per day, and sometimes his left leg goes numb because of pain from his back.  Eldridge also testified that he can sit no more than ten minutes at a time.  The ALJ found that the medical record does not indicate that Eldridge has been found to have a spinal abnormality severe enough to cause the limitations he alleges with regard to his back.  The ALJ cited an MRI performed in May 2003 which revealed a small, central disc bulge at L5-S1 that was associated with a small annular tear but no disc herniation or spinal stenosis was found.  No subsequent radiological studies have revealed that Eldridge has developed disc herniation or another condition that seriously interferes with his abilities to sit, walk or stand.  Further, as the ALJ noted, Eldridge has not had spinal surgery and no surgery has been recommended.  Rather, his pain has been largely treated with

oral pain medications. The records of Dr. Echeverria and Dr. Lingreen support this determination. Further, although Eldridge complains of dizziness, the medical record does not indicate that he has reported problems with frequent episodes of dizziness. The record also shows that Eldridge's hypertension can be controlled with medication.

Regarding his mental impairments, as the ALJ noted, the medical record does not show a serious deterioration in his overall mental condition. He has not required any hospitalization and his symptoms are under control with medication. Dr. Raza has prescribed medication for depression and Eldridge suffers no side effects from this medication. The ALJ noted that Eldridge spoke clearly during the hearing and answered in a logical, coherent manner. Additionally, there is evidence in the record that Eldridge attempted to exaggerate his limitations during evaluations which properly factored into the ALJ's credibility determination.

The ALJ also cited opinion evidence from state agency reviewers and consultative examiners. Consultative examiner, Dr. Burns, opined that Eldridge retained the RFC for sedentary work   One state agency reviewer found that Eldridge was capable of medium work but the ALJ noted that he did not have the benefit of subsequent medical evidence. Thus, the ALJ determined that Eldridge was entitled to the benefit of the doubt concerning the extent of his work-related limitations.

The ALJ's detailed reasoning shows that the ALJ thoroughly considered Eldridge's subjective complaints of disabling impairments but rejected them based on the record as a whole. The Court finds that the ALJ's determination of Eldridge's RFC was supported by substantial evidence and was not in error.

### III. CONCLUSION

For the reasons set forth above, the Court, being fully and sufficiently advised, hereby **ORDERS** as follows:

(1)   the plaintiff's motion for summary judgment [DE #6] is **DENIED**;

(2)   the Commissioner's motion for summary judgment [DE # 7] is **GRANTED**;

(3)   the decision of the Commissioner is **AFFIRMED** pursuant to sentence 4 of 42 U.S.C. § 405(g) as it was supported by substantial evidence and decided by the proper legal standards; and

(4)   a judgment will be entered contemporaneously with this Opinion and Order.

This December 29, 2009.

**Signed By:**
*Karl S. Forester*   KSF
**United States Senior Judge**